IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-679

No. COA21-620

Filed 18 October 2022

Beaufort County, No. 19CRS050327

STATE OF NORTH CAROLINA

v.

MICHAEL TERRELL BOOTH

Appeal by Defendant from judgment entered 3 December 2020 by Judge Joshua W. Willey Jr., in Beaufort County Superior Court. Heard in the Court of Appeals 9 August 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Zach Padget, for the State-Appellee.*

*Jarvis John Edgerton, IV, for Defendant-Appellant.*

COLLINS, Judge.

¶ 1      Defendant appeals from judgment entered upon jury verdicts of guilty of possession with intent to sell or deliver marijuana within 1,000 feet of a school and possession of marijuana paraphernalia. Defendant argues that the trial court erred by admitting hearsay testimony into evidence and by denying his motion to dismiss for insufficient evidence. Because the admission of the challenged testimony was not plainly erroneous and there was sufficient evidence that the substance at issue was

marijuana, Defendant received a fair trial, free from prejudicial error.

## I.   Procedural History and Factual Background

¶ 2        Defendant Michael Terrell Booth was indicted for possession of marijuana within 1,000 feet of a school with intent to sell or deliver and possession of drug paraphernalia.  At trial, Lieutenant Russell Davenport testified that he and other members of the Beaufort County Sheriff's Office used a confidential informant to conduct controlled drug purchases at Booth's car wash, owned by Defendant's father, between February and March 2019.  Booth's car wash is located 909 feet from John Cotton Tayloe Elementary School.

¶ 3        Davenport testified to the details of the controlled purchases.  The first two purchases occurred on 15 and 28 February and involved a confidential informant purchasing marijuana at Booth's car wash, but not from Defendant.  Officers conducted a third controlled buy on 1 March, during which the confidential informant wore an audio transmitter.  During the buy, the confidential informant met with Defendant and Jermaine Moore, Defendant's friend, and Davenport heard Defendant and Moore discussing the price of marijuana and cocaine.  The officers conducted a fourth controlled buy on 7 March, during which the confidential informant wore an audio transmitter and video camera.  Davenport saw and heard Defendant discussing the prices of drugs with Moore before handing Moore the drugs to give to the confidential informant.

¶ 4        Davenport applied for and received a search warrant for Booth's car wash. After the warrant was signed, Davenport conducted a fifth controlled buy on 8 March, during which Davenport, through the confidential informant's audio transmitter and video camera, saw and heard Defendant speaking with the confidential informant.

¶ 5        The search warrant was executed shortly thereafter, and items were seized. From the back room of the car wash, Davenport seized a large plastic bag containing approximately 120 grams of a green leafy substance, nine small plastic bags containing a green leafy substance, a digital scale, and an ammunition box containing vacuum sealed bags with "marijuana odor and residue." From the white van, Davenport seized a glass jar, plastic bag with the corner removed, and a clear round container "containing marijuana residue[.]" From Defendant's person, Davenport seized $563 in U.S. currency, $200 of which was documented money provided to the confidential informant for the controlled buys. In an interview, Defendant confessed that the items seized belonged to him.

¶ 6        A chemical analysis of the green leafy substance indicated the presence of tetrahydrocannabinol (THC) but did not indicate the amount of THC present in the sample. Davenport testified at trial that due to his extensive training and experience on current drug trends and drug enforcement, he can smell the THC levels of cannabis plants and see the difference between hemp and marijuana.

¶ 7        Defendant was found guilty on both counts and given a consolidated sentence

within the presumptive range of 42 to 63 months in prison. Defendant entered an oral notice of appeal in open court.

## II.   Discussion

### A. Admission of Evidence

¶ 8        Defendant first contends that the trial court committed plain error by admitting Davenport's testimony concerning the controlled buys and Defendant's age, and by admitting the search warrant and affidavit into evidence. Defendant mischaracterizes the nature of much of Davenport's testimony.

¶ 9        Defendant concedes he has failed to preserve for appeal his objection to the testimony and documentary evidence he now challenges, but specifically and distinctly argues plain error. *See* N.C. R. App. P. 10(a)(4); *see also State v. Maddux*, 371 N.C. 558, 564, 819 S.E.2d 367, 371 (2018) ("An appellate court will apply the plain error standard of review to unpreserved instructional and evidentiary errors in criminal cases.").

¶ 10        Under plain error review, a defendant must show that a "fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). An error is deemed fundamental upon a showing of prejudice; in other words, a defendant must show that, "after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). Plain error should be

used sparingly and only in exceptional cases where the error affects a substantial right that seriously affects the fairness, integrity, and reputation of judicial proceedings. *State v. Thompson,* 254 N.C. App. 220, 224, 801 S.E.2d 689, 693 (2017).

### 1. *Testimony regarding the controlled buys*

¶ 11        Defendant contends that the trial court committed plain error by admitting Davenport's testimony concerning the controlled buys because the testimony was read directly from the search warrant and affidavit and was thus hearsay.

¶ 12        Hearsay is an out-of-court statement offered for the truth of the matter asserted. N.C. Gen. Stat. § 8C-1, Rule 801(c) (2020). Hearsay is not admissible absent an exemption or exception. N.C. Gen. Stat. § 8C-1, Rule 802 (2020). Pursuant to Rule 602 of our rules of evidence,

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.

N.C. Gen. Stat. § 8C-1, Rule 602 (2020). "[P]ersonal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." N.C. Gen. Stat. § 8C-1, Rule 602 official commentary; *see also State v. Harshaw*, 138 N.C. App. 657, 661, 532 S.E.2d 224, 227 (2000).

¶ 13        Without reading the search warrant, Davenport testified that he used to work with Defendant's father and that he remembered Defendant when he was a little boy.

He acknowledged that he was familiar with the sound of Defendant's voice and could recognize it on an audio recording. Davenport also testified that he was familiar with Moore's voice, having arrested Moore "numerous times and met with him in person and talked to him in the streets, face-to-face encounters[,]" and that he could distinguish Defendant's voice from Moore's voice.

¶ 14        Davenport further testified without the aid of the search warrant that when he was listening to the audio transmitter worn by the confidential informant during the 1 March controlled buy, he heard Defendant, Moore, and the confidential informant discussing the price of marijuana. Defendant "said the price of an ounce of marijuana would be $250." Davenport watched Defendant, Moore, and the confidential informant get into Defendant's car. Davenport met with the confidential informant after the buy and retrieved an ounce of green leafy substance.

¶ 15        After this controlled buy, Davenport "kept monitoring the car wash." Davenport testified that during the 7 March controlled buy, the confidential informant was equipped with an audio transmitter and video camera. Davenport reviewed the video and observed Defendant discussing the prices of marijuana and cocaine and supplying Moore with the drugs to give to the confidential informant. Davenport testified that during the 8 March controlled buy, the confidential informant was equipped with a video camera, and Davenport reviewed the video.

Davenport testified that he could "hear the exchange of marijuana and talking about the smell of the marijuana."

¶ 16　　Davenport did read portions of the search warrant to himself and out loud. However, in light of Davenport's extensive testimony from personal knowledge, and Defendant's ability to cross-examine Davenport regarding the contents of the search warrant, any error in the admission of Davenport's testimony regarding the controlled buys was not prejudicial and thus, not plain error. *See State v. Ridgeway*, 137 N.C. App. 144, 147-48, 526 S.E.2d 682, 685 (2000) (holding that even if the officer's testimony was hearsay, its admission did not rise to plain error).

### 2. *Testimony regarding Defendant's age*

¶ 17　　Defendant contends that the trial court committed plain error by admitting Davenport's testimony concerning Defendant's birth date because the testimony was read directly from the search warrant and affidavit and was thus hearsay.

¶ 18　　An essential element of possession with intent to sell or deliver within 1,000 feet of a school is that the defendant is over 21 years of age. N.C. Gen. Stat. § 90-95(a)(1) (2019). The State is not required to offer the birth certificate of a defendant to establish the defendant's age; testimony is sufficient. *State v. Cortes-Serrano*, 195 N.C. App. 644, 652-53, 673 S.E.2d 756, 761 (2009). However, a witness may not testify to a matter unless there is evidence sufficient to support a finding that he has personal knowledge of the matter. N.C. Gen. Stat. § 8C-1, Rule 602. A lay witness

with adequate opportunity to observe a defendant may state their opinion regarding his age when "the fact that he was at the time in question over a certain age is one of the essential elements to be proved by the state." *State v. Gray*, 292 N.C. 270, 287, 233 S.E.2d 905, 916 (1977). The jury may rely on their in-court observations, supplemented by other direct or circumstantial evidence, in determining a defendant's age. *State v. Ackerman*, 144 N.C. App. 452, 461-62, 551 S.E.2d 139, 145-46 (2001). In addition, "[t]he credibility of the witnesses and the weight to be given their testimony is exclusively a matter for the jury." *State v. Scott*, 323 N.C. 350, 353, 372 S.E.2d 572, 575 (1988) (citation omitted).

¶ 19        On direct examination, Davenport testified, "I used to work with [Defendant's] daddy and also remember [Defendant] when he was a little boy, working and coming along and hanging out with his daddy." On cross-examination, Davenport acknowledged that he had known Defendant's father "for quite a while" because Defendant's father had been in business with Davenport's brother-in-law "approximately about 30 years ago," acknowledged that Davenport and Defendant's father "had a friendly relationship," and acknowledged that Davenport had known Defendant "since he was a little boy." When defense counsel asked Davenport whether it "would be fair to say you have known [Defendant] for over 30 years[,]" Davenport responded, "I was (sic) say, yes, roughly 30 years." When asked on

re-direct how old Defendant was, Davenport testified, "I'm not sure.  I'd say he was in his 30s."

¶ 20    Although Davenport read Defendant's birthdate out loud from the search warrant, Defendant had the opportunity to cross–examine Davenport regarding his testimony and the statements contained in the warrant, and there was ample other evidence in the record to establish that Defendant was over 21 years of age.  Any error in the admission of the testimony regarding Defendant's birthdate was not prejudicial and thus, not plainly erroneous.  *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

### 3. *Search Warrant*

¶ 21    Defendant next contends that it was plain error to admit the search warrant into evidence because the document contained hearsay.

¶ 22    Generally, an affidavit for a search warrant and the search warrant itself are inadmissible at trial because they are hearsay statements and deprive the defendant the right of confrontation and cross-examination.  *State v. Wilson*, 322 N.C. 117, 137, 367 S.E.2d 589, 601 (1988) (citations omitted).

¶ 23    Here, although the search warrant may have been erroneously admitted into evidence, Defendant had the opportunity to cross-examine Davenport about his testimony and the contents of the search warrant, and Davenport testified from personal knowledge about most of the contents of the search warrant.  Thus, any

error in admitting the affidavit and search warrant into evidence was not plain error. *See State v. Jackson*, 24 N.C. App. 394, 402-03, 210 S.E.2d 876, 882 (1975) (holding that there was no plain error where, although the arrest complaint and warrant were admitted into evidence, the State's witnesses were subject to cross-examination regarding the statements made in preparing the warrant).

**B. Sufficient Evidence**

Defendant next contends that the trial court erred by denying his motion to dismiss because the State failed to introduce sufficient evidence that the green leafy substance seized from Booth's car wash was marijuana.

The standard of review for the denial of a motion to dismiss is de novo. *State v. Stroud*, 252 N.C. App. 200, 208, 797 S.E.2d 34, 41 (2017) (citation omitted). Under this standard, "the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation omitted). This Court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002).

To withstand a motion to dismiss, the State must present substantial evidence of the essential elements of the charged offense. *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). Evidence is substantial if it is adequate to convince a reasonable mind to accept a conclusion. *State v. Robinson*, 355 N.C. 320, 336, 561

S.E.2d 245, 255 (2002). Whether evidence is substantial is a question of law for the court, whereas what the evidence proves or fails to prove is a question of fact for the jury. *State v. Thompson*, 256 N.C. 593, 595-96, 124 S.E.2d 728, 730 (1962). Incompetent evidence that was admitted "must be considered as if it were competent." *State v. Vestal*, 278 N.C. 561, 567, 180 S.E.2d 755, 760 (1971).

¶ 27 A person over 21 years of age who manufactures, sells, or delivers marijuana, a Schedule IV controlled substance, within 1,000 feet of an elementary or secondary school shall be guilty of a class E felony. N.C. Gen. Stat. §§ 90-95(a)(1), 90-94(b)(1) (2019), 90-95(e)(8) (2019). Additionally, it is a class 3 misdemeanor "for any person to knowingly use, or to possess with intent to use, drug paraphernalia to . . . package, repackage, store, contain, or conceal marijuana or to inject, ingest, inhale, or otherwise introduce marijuana into the body." N.C. Gen. Stat. § 90-113.22A (2019). At the time of Defendant's arrest, the General Assembly had statutorily redefined marijuana to exclude hemp. Hemp was defined as "the plant Cannabis sativa . . . with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis." N.C. Gen. Stat. § 90-87(13a) (2019). Marijuana was defined as "all parts of the plant of the genus Cannabis," but "does not include hemp or hemp products." *Id.* § 90-87(16) (2019). "The difference between the two substances is that industrial hemp contains very low levels of tetrahydrocannabinol . . . , which is the psychoactive ingredient in marijuana." *State*

*v. Parker*, 27 N.C. App. 531, 2021-NCCOA-217, ¶ 27.

¶ 28 Prior to the legalization of industrial hemp, a law enforcement officer was permitted to identify marijuana by sight and smell, and the officer's testimony was sufficient to show that a substance was marijuana. *State v. Fletcher*, 92 N.C. App. 50, 57, 373 S.E.2d 681, 685-86 (1988) (citation omitted). Defendant argues that because the definition of marijuana has changed, Davenport's identification of the substance as marijuana by sight and/or smell was insufficient to support Defendant's convictions.

¶ 29 We first note that Defendant did not object at trial to the admission of Davenport's testimony and does not argue plain error on appeal. Furthermore,

> for purposes of examining the sufficiency of the evidence to support a criminal conviction, it simply does not matter whether some or all of the evidence contained in the record should not have been admitted; instead, when evaluating the sufficiency of the evidence, all of the evidence, regardless of its admissibility, must be considered in determining the validity of the conviction in question.

*State v. Osborne*, 372 N.C. 619, 630, 831 S.E.2d 328, 335 (2019) (citations omitted). Consistent with *Osborne*, we consider whether the evidence admitted by the trial court—including Davenport's testimony—constituted sufficient evidence that the substance was marijuana.

¶ 30 Davenport conducted controlled buys on 7 March and 8 March, which directly involved Defendant. During those buys, Davenport saw on video and heard on audio

Defendant tell the confidential informant that "the price of an ounce of marijuana was $250" before Moore handed the drugs to the informant. Davenport testified that the price of an ounce of marijuana was "[a]nywhere from 250 to 300[.]" Davenport testified that while searching Booth's car wash, "I found a white grocery bag that contained a larger bag of green leafy substance, which I know to be marijuana[,]" and inside that "larger bag of marijuana" were "multiple bags of marijuana." Davenport testified that the nine smaller plastic bags within the larger bag indicated "[t]he involvement of distribution and selling" because "they were packaged individually for sale."

¶ 31        Davenport further testified that the glass jar, plastic bag with the corner removed, and clear round container "contained marijuana residue and smelled the odor of marijuana." When asked of the significance of the plastic bag with the corner removed, Davenport responded that "people take sandwich bags and the corners of bags to put drugs in the bottom of the corner of the bags to hold it, and they normally would rip the bottom corner out, tie the package so it can be sold."

¶ 32        When asked about the ammunition box, Davenport testified that it had the "odor of marijuana" and the vacuum sealed bags inside had residue of a "green leafy substance that I'm familiar with to be marijuana--residue in the bottom of the bags as well as a name written on the side that I am familiar with. It is called Blue Cookies." When asked why that name was familiar to him, Davenport responded, "I

have purchased other bags of marijuana that is supposed to be the name brand of

Blue Cookies." Davenport testified that

> [p]eople involved in the distribution of drugs use vacuum sealed bags in an effort to disclose the smell, to hide the smell, the odor of whatever controlled substance is in the bag, in an effort to keep law enforcement from smelling it, and also sometimes in an effort to try to keep K9s from indicating the smell.

¶ 33        Defendant admitted in an interview that the items seized from the back room of the car wash, including the plastic bags and scale, belonged to him. Davenport also seized $563 in U.S. currency directly from Defendant, $200 of which was documented money provided to the confidential informant. From this evidence, a jury could reasonably infer that the substance seized was marijuana, and that the digital scale and various baggies and containers seized were marijuana paraphernalia.

¶ 34        Considering this evidence in the light most favorable to the State and giving the State the benefit of all reasonable inferences, there was sufficient evidence to support a finding that the substance seized was marijuana and that the digital scales, baggies, and various containers found with the marijuana were marijuana paraphernalia. Accordingly, the trial court did not err by denying Defendant's motion to dismiss.

### III.        Conclusion

¶ 35        The trial court did not plainly err by admitting Davenport's testimony

concerning the controlled buys and Defendant's age, or by admitting the search warrant and affidavit into evidence.  Furthermore, the State presented sufficient evidence that the green leafy substance seized from Booth's car wash was marijuana and that the various items seized along with the marijuana were marijuana paraphernalia.

NO PLAIN ERROR; NO ERROR.

Judges STROUD and ARROWOOD concur.